Dennis P. FOGARTY and Mary M. Fogarty, Appellants,

v.

HEMLOCK FARMS COMMUNITY ASSOCIATION, INC.

Commonwealth Court of Pennsylvania.

Argued Sept. 13, 1996.

Decided Nov. 15, 1996.

Arthur L. Zulick, Stroudsburg, for Appellants.

Janet K. Catina, Stroudsburg, for Appellee.

Before COLINS, President Judge, SMITH, J., and KELTON, Senior Judge.

SMITH, Judge.

Dennis Fogarty and Mary M. Fogarty (the Fogartys) appeal from an order of the Court of Common Pleas of Pike County that granted a motion for summary judgment on behalf of Hemlock Farms Community Association, Inc. (HFCA), holding that HFCA has the power to levy special assessments for the construction of three capital improvements—a community mail office, an administration building and a community clubhouse—and that the Fogartys are obligated to pay their assessment. The questions presented are whether HFCA exceeded its authority under the Fogartys' deed covenant by imposing the special assessments and whether HFCA violated the debt ceiling limitations set forth in

Section 6.8(b) of its Bylaws when it incurred debt for the construction.

In 1969 the Fogartys purchased a property in the Hemlock Farms Community in Blooming Grove Township, Pike County. Under a protective covenant contained in their deed, the Fogartys are required to become members of HFCA, which is an association comprised of all the homeowners in the Hemlock Farms Community. The deed covenant also requires the Fogartys to pay annual dues and fees, as well as assessments for control, maintenance and repair of streets, roads and recreational facilities.

■ On July 14, 1990, the membership of HFCA passed a resolution that imposed special assessments upon all members to offset construction costs for the three improvements. HFCA's Board of Directors estimated that the costs of the project would be $2,675,000. HFCA imposed a $151 assessment on the Fogartys in September 1990 and a $119 assessment in June 1991. The Fogartys refused to pay the assessments and filed an action in the trial court seeking a declaration that the assessments were invalid in that they were not authorized by the covenants in the Fogarty's deed or by HFCA's Bylaws. Following the close of discovery, both parties filed motions for summary judgment. The trial court granted summary judgment on behalf of HFCA and upheld the special assessments. The Fogartys appeal.[1]

■ The Fogartys contend that the trial court erred in determining that HFCA was authorized by the deed covenant and its Bylaws to impose these special assessments. In part, Paragraph 10 of the deed covenant provides:

> The Purchaser agrees to join the Hemlock Farms Community Association, the only qualification for election to membership being ownership or prospective ownership of a Lot or Lots or acreage within the development, and to maintain such membership, and pay (i) such annual fees or dues as the Association may by its by-laws prescribe, (ii) such assessments as the As-

sociation may charge for the repair and maintenance of the streets and roads and (iii) such assessments as the association may charge for control, maintenance and administration of beach and other recreational facilities, and (iv) fire service fee of $18.00 per year in respect of each and every Lot owned by the Purchaser on which a house has not been erected.

The Fogartys contend that the deed covenant is non-restrictive. They cite *Birchwood Lakes Community Ass'n, Inc. v. Comis,* 296 Pa. Superior Ct. 77, 442 A.2d 304 (1982), for the proposition that if an agreement in a non-restrictive covenant is not clearly expressed or is susceptible to more than one interpretation, the words of the deed must be construed most strongly against the grantor and most favorably toward the grantee, unless the grantee drafted the deed.

Although the Fogartys do not challenge HFCA's decision to construct the new improvements, they argue that HFCA must pay for these improvements through annual fees and borrowing as specified in the deed covenant. The Fogartys claim that Paragraph 10 does not authorize special assessments for these type of capital improvements but only authorizes special assessments for the maintenance and repair of streets and roads and for the control, maintenance and administration of the beach and other recreational facilities.

The trial court, however, determined that the deed covenant did not prohibit the levying of special assessments and that HFCA is authorized by its Bylaws to levy special assessments. The trial court further determined that HFCA may, by the implied intent of the parties, levy authorized special assessments for the building of improvements that benefit all association members, in the absence of an express agreement prohibiting such assessments. To support its decision, the trial court relied on *Meadow Run and Mountain Lake Park Ass'n v. Berkel,* 409 Pa. Superior Ct. 637, 642, 598 A.2d 1024, 1027 (1991), *appeal denied,* 530 Pa. 666, 610 A.2d 46 (1992), where the Court held that:

---

1. This Court's scope of review of an order granting or denying summary judgment is limited to determining whether the trial court abused its discretion or committed an error of law. *City of Philadelphia v. Melendez,* 156 Pa.Cmwlth. 271, 627 A.2d 234 (1993).

[A]bsent an express agreement prohibiting assessments, when an association of property owners in a private development is referred to in the chain of title and has the authority to regulate each property owner's use of common facilities, inherent in that authority is the ability to impose reasonable assessments on the property owners to fund the maintenance of those facilities.

The Fogartys argue that *Meadow Run and Mountain Lake Park Ass'n* is distinguishable from the present case. In that case, the homeowners' association passed a resolution assessing each homeowner $300 for the repair of dams and roads. The appellants argued that there was no specifically expressed deed covenant authorizing such an assessment. Nevertheless, the Superior Court reasoned that because all property owners' deeds notified them that they had the right to use the facilities and that they were bound by certain rules regarding that right, there existed implied rules and regulations regarding the maintenance of those facilities. The Fogartys claim that the deed in the present case, in contrast, expressly limits the imposition of special assessments only to the maintenance and repair of roads and recreational facilities.

The Fogartys also rely on the basic principle of contract law that the intent of the parties to a contract is to be determined solely from its express language and that any ambiguities or doubtful language must be construed most strongly against the drafter. *Rusiski v. Pribonic*, 511 Pa. 383, 515 A.2d 507 (1986). They refer also to the maxim *expressio unius est exclusio alterius* to support their position that because the deed covenant specifically lists all obligations that the HFCA may require them to meet, special assessments for items not contained in the covenant are thereby excluded.

On the other hand, HFCA contends that because it is a nonprofit corporation operating in the Commonwealth, it is governed by provisions of the Nonprofit Corporation Law of 1988 (NCL), 15 Pa.C.S. §§ 5101–6162. Specifically, HFCA relies on Section 5544(a) of the NCL, 15 Pa.C.S. § 5544(a), relating to fees, dues and assessments, which provides:

(a) **General rule.**—A nonprofit corporation may levy dues or assessments, or both, on its members, if authority to do so is conferred by the bylaws, subject to any limitations therein contained. Such dues or assessments, or both, may be imposed upon all members of the same class either alike or in different amounts or proportions, and upon a different basis upon different classes of members. Members of one or more classes may be made exempt from either dues or assessments, or both, in the manner or to the extent provided in the bylaws.

Noting that the Fogartys are required by the deed covenant to become HFCA members, HFCA refers to the following pertinent Bylaw provisions by which the Fogartys are governed:

Section 2.4. Obligations of membership.

The obligations of membership shall be:

· · ·

(b) To pay all dues, assessments and user fees, including those relating to receipt of water or other utility service, levied pursuant to the authority granted by these Bylaws.

Section 3.1 Powers.

Subject to the restrictions of these Bylaws, the Board of Directors shall:

· · ·

(b) Promulgate rules and regulations and levy dues, fees and special assessments in respect thereof and take any other lawful action in respect thereto.

Section 6.3. Dues, fees and assessments.

(a) Membership dues, fees, utility charges and assessments shall be fixed by the Board and vary reasonably as between improved, unimproved and adjacent lots.

HFCA contends that, pursuant to these provisions, its Board of Directors has the power to promulgate and levy special assessments for various purposes and that the deed covenants refer strictly to the obligations of the buyers and do not impose any restrictions on corporate authority to make capital improvements. HFCA further argues that *Meadow Run & Mountain Lake Park Ass'n* supports the position that where no express agree-

ment prohibiting special assessments exists in the deed covenant and where property owners are required to join the association, the property owners are thereby bound by the Bylaws. This Court agrees with HFCA.

In *Meadow Run & Mountain Lake Park Ass'n*, the Superior Court further stated:

> Residential communities such as Meadow Run and Mountain Lake Park, are "analogous to mini-governments" and as such are dependent on the collection of assessments to maintain and provide essential and recreational facilities. *Holiday Pocono Civic Association, Inc. v. Benick*, 7 D. & C.3d 378 (1978). When ownership of property within a residential community allows the owners to utilize roads and other common areas of the development, there is an impled [sic] agreement to accept the proportionate costs for maintaining and repairing these facilities.

*Id.*, 409 Pa. Superior Ct. at 640, 598 A.2d at 1026.

In the present case, all members of HFCA will benefit from the new mail office, administration building and clubhouse. Although the Fogartys' deed does not mention an assessment for these improvements, it does not impose restrictions on the authority granted to HFCA under its Bylaws to construct such facilities. Therefore, absent language in the deed covenant prohibiting HFCA from levying special assessments for capital improvements, the Fogartys may be assessed their proportionate costs to construct the new improvements.

■ The Fogartys further argue that the capital improvements made by HFCA were unauthorized because the debt created by HFCA violated the debt ceiling restrictions of the Bylaws. Section 6.8(b) of the Bylaws provides:

> Debt ceiling. No debts to finance capital expenses or capital projects shall be incurred which shall have the effect of increasing the annual debt service of the Association for interest and amortization above ten percentum (10%) of the annual operating expense budget for any one (1) year; provided, however, that where the Board determines that additional debt service is necessary in order to provide ade-

quate water service to the membership, the Board may, by a two-thirds vote of its members, exceed the ten percent (10%) limitations set forth above, but the total debt service shall not exceed twenty percent(20%).

The Fogartys assert that ten percent of the 1990 operating budget amounted to $281,024.70. On April 27, 1991, after raising nearly $800,000 through the special assessments, HFCA obtained a construction and term loan in the maximum amount of $1,875,000 from the First National Bank of Pike County. The loan required an annual payment of ten percent of the outstanding principal and interest at the rate of prime plus one percent. The prime rate on that date was nine percent.

The Fogartys claim that the potential annual principal payment of $187,500 and accompanying interest payment of $187,500 amounted to $375,000, an amount that exceeds ten percent of the previous operating budget. To the contrary, HFCA contends that the Fogartys' argument is premature in that HFCA's borrowing did not exceed the debt limitation. This Court's review of the record indicates that HFCA did not borrow the full $1,875,000 but, in fact, borrowed much less. The parties do not dispute that the annual debt never exceeded the debt ceiling in Section 6.8(b) of HFCA's Bylaws.

■ Declaratory judgment is available only where an actual controversy exists; it is not appropriate to determine rights in anticipation of events that may never occur. *Pennsylvania Protection & Advocacy, Inc. v. Department of Education*, 148 Pa.Cmwlth. 153, 609 A.2d 909 (1992). Such is the case here. HFCA never violated the debt ceiling, and, as a consequence, the Fogartys' action for declaratory judgment on this issue was properly dismissed. In view of the foregoing, the order of the trial court is affirmed.

### ORDER

AND NOW, this 15th day of November, 1996, the order of the Court of Common Pleas of Pike County is hereby affirmed.