**MAYFLOWER SQUARE CONDOMINIUM ASSOCIATION**

v.

**KMALM, INC., Appellant.**

Commonwealth Court of Pennsylvania.

Argued Oct. 6, 1998.

Decided Jan. 8, 1999.

Reargument Denied March 9, 1999.

Marc A. Zaid, Bala Cynwyd, for appellant.

Steven L. Sugarman, Paoli, for appellee.

Before McGINLEY, J., SMITH, J., and MIRARCHI, Jr., Senior Judge.

MIRARCHI, Jr., Senior Judge.

KMALM, Inc. (KMALM) appeals from an order of the Court of Common Pleas of Montgomery County entering summary judgment in favor of the Mayflower Square Condominium Association (Association) in an action filed by the Association against KMALM to recover unpaid monthly fees and assessments for garage parking spaces.

The following relevant facts are undisputed. Mayflower Associates owned a sixty-four unit apartment complex, including an underground garage and a rear development parcel, located at 922 West Montgomery Avenue, Bryn Mawr, Lower Merion Township, Montgomery County. In January 1984, pursuant to the Uniform Condominium Act (Act), 68 Pa.C.S. §§3101–3414, Mayflower Associates converted the apartment complex to a flexible condominium,[1] to be known as "Mayflower Square Condominium" (Condominium), by recording a declaration of condominium (Declaration) in the Montgomery County Office of Recorder of Deeds. Mayflower Associates subsequently added the rear development parcel (Additional Real Estate) to the Condominium in a Corrective Amendment to the Declaration recorded on July 18, 1984. The plats and plans attached to the Corrective Amendment showed twelve townhouse units to be built on the Additional Real Estate.

After establishing the condominium regime in 1984, Mayflower Associates experienced financial difficulties and was unable to complete improvement on the common area of the Condominium or obtain approval of the Lower Merion Township for construction of the proposed townhouse units on the Additional Real Estate. In 1985, Mayflower Associates filed a petition for bankruptcy in the United States Bankruptcy Court for the Eastern District of Pennsylvania, and as a result, the Condominium was thereafter administered by a trustee appointed by the Bankruptcy Court.

In January 1987, the Declaration was again amended in a Second Corrective Amendment to correctly label and identify

---

1. A "flexible condominium" is defined as "[a] condominium containing withdrawable or convertible real estate, a condominium to which additional real estate may be added, or a combination thereof." Section 3103 of the Act, 68 Pa.C.S. §3103.

the twelve units proposed on the Additional Real Estate and to assign percentage interests for those units. Subsequently on June 4, 1991, the bankruptcy trustee, on behalf of Mayflower Associates, and Marc A. Zaid (Zaid) entered into an agreement,[2] in which Zaid agreed to buy the Additional Real Estate, the proposed townhouse units, garage parking spaces unsold to the third parties and special declarant rights set forth in the Declaration. Following the Bankruptcy Court's approval of the sale, Zaid assigned his interests to KMALM.

By a deed executed on February 18, 1992, the bankruptcy trustee, on behalf of Mayflower Associates, conveyed to KMALM the legal title to the property, consisting of (1) all the condominium units, except those already sold to the third parties; and (2) "the Right to Exclusive use of all the Garage Parking Spaces as set forth in Plat and Plan of Declaration of Condominium ... and [the subsequent collective amendments]," except the garage parking spaces already allocated to the third parties listed in the deed. The trustee also executed Assignment, assigning, *inter alia:*

> 3. All rights and interests whatsoever as Declarant under the recorded Declaration of Condominium for the Property, and those recorded amendments thereto, thereby establishing Assignee hereunder as Successor Declarant under the Pennsylvania Uniform Condominium Act with the power to exercise all applicable retained and special Declarant rights as described in said Declaration of Condominium.

Since KMALM acquired the title to the property, the townhouse units have not been built on the Additional Real Estate. On June 4, 1996, the Association filed an action against KMALM, alleging that KMALM failed to pay the Association assessments and monthly fees for the twelve parking spaces allocated to the townhouse units conveyed in the 1992 deed. The Association sought $16,-249.74 for unpaid assessments, monthly fees, late fees, interests and legal fees. In response, KMALM alleged in its answer and counterclaim that it did not own any townhouse unit in the Condominium and therefore was not obligated to pay the assessments and monthly fees.

KMALM subsequently filed a motion for summary judgment and in response, the Association also filed a cross-motion for summary judgment. The trial court concluded that KMALM became the owner of the twelve townhouse units and the parking spaces designated for those units when it accepted the deed in 1992, and that under the Act and the Declaration, KMALM is obligated to pay for the expenses incurred in maintaining the parking spaces. The trial court accordingly granted the Association's cross-motion for summary judgment and denied KMALM's motion for summary judgment. KMALM's appeal to this Court followed.[3]

Summary judgment may be granted in whole or in part, "whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report ...." Pa. R.C.P. No. 1035.2(1). Grant of summary judgment is proper, only where viewing all the facts in the light most favorable to the nonmoving party and resolving all doubts as to the existence of material fact against the moving party, the moving party is entitled to judgment as a matter of law. *Dorohovich v. West American Ins. Co.,* 403 Pa.Super. 412, 589 A.2d 252 (1991). The party moving for summary judgment has the burden of proving that no genuine issue of material fact exists. *Allen v. Mellinger,* 156 Pa.Cmwlth. 113, 625 A.2d 1326 (1993), appeal denied, 537 Pa. 653, 644 A.2d 738 (1994). Summary judgment may be grant-

---

2. Zaid had previously entered into an agreement with the Association, in which Zaid agreed to pay the Association $75,000 for the Association's support for Zaid's effort to develop eight townhouse units on the Additional Real Estate.

3. KMALM initially appealed to the Superior Court. The Superior Court subsequently granted the Association's motion and transferred the appeal to this Court, which has exclusive appellate jurisdiction over the matters relating to not-for-profit corporations, such as the Association, and their corporate affairs. *See* Section 762(a)(5) of the Judicial Code, as amended, 42 Pa.C.S. §762(a)(5).

ed, only where the moving party's right is clear and free from doubt. *Id.*

■ KMALM contends that when it accepted the deed in 1992, it only acquired a successor declarant status, not the ownership of the twelve townhouse units which have not been built on the Additional Real Estate, and that therefore, it is not obligated to pay the assessments and fees for the parking spaces.[4]

In Section 6.1 of the Declaration, Mayflower Associates, as a declarant, explicitly reserved the right to add the Additional Real Estate to the Condominium "in compliance with Section 3211 of the Act." Section 3211(a) of the Act provides:

> To convert convertible real estate or add additional real estate pursuant to an option reserved under section 3206(1) (relating to contents of declaration; flexible condominiums), the declarant shall prepare, execute and record an amendment to the declaration (section 3219) and comply with section 3210 (relating to plats and plans). *The declarant is the unit owner of any units thereby created.* The amendment to the declaration must assign an identifying number to each unit formed in the convertible or additional real estate and reallocate common element interests, votes in the association and common expense liabilities. The amendment must describe or delineate any limited common elements formed out of the convertible or additional real estate, showing or designating the unit to which each is allocated to the extent required by section 3209 (relating to limited common elements). (Emphasis added.)

In the 1984 and 1987 Corrective Amendments executed and recorded upon approval of the executive board of the Association, Mayflower Associates added to the Condominium the Additional Real Estate and the twelve townhouse units. In the attached the plats and plans, Mayflower Associates identified the units, assigned the parking spaces to the units and assigned percentage interests for the units. Thus, pursuant to Section 3211(a) Mayflower Associates became the owner of the twelve townhouse units and the parking spaces created by the 1987 Corrective Amendment. KMALM subsequently acquired the ownership of the twelve townhouse units and the garage parking spaces by accepting the deed from the bankruptcy trustee in 1992.

KMALM argues, however, that the units could not have been legally created in 1987 or subsequently sold to a third party due to Mayflower Associates' failure to comply with Section 3201(b) and (c) of the Act, 68 Pa.C.S. §3201(b) and (c), then in effect, which provided in pertinent part: [5]

> (b) Substantial completion prerequisite to recording.—A declaration or an amendment to a declaration adding units to a condominium, may not be recorded unless all structural components and mechanical systems of all buildings containing or comprising any units thereby created are substantially completed in accordance with the plans, as evidenced by a recorded certificate of completion executed by an independent registered surveyor, architect or professional engineer.

> (c) Substantial completion prerequisite to conveyance.—No interest in a unit may be conveyed until the unit is substantially completed as evidenced by a recorded certificate of completion executed by an independent registered architect, surveyor or professional engineer.

■ Under Section 3219(b) of the Act, 68 Pa.C.S. §3219(b), however, "[n]o action to challenge the validity of an amendment adopted by the association ... may be brought more than one year after the amendment is recorded." KMALM never questioned the validity of the 1987 Corrective Amendment or its recording before the commencement of the instant action in 1996 and therefore may not now raise the issue of

---

4. This Court's scope of review of the trial court's decision to grant or deny a motion for summary judgment is limited to determining whether the trial court committed an error of law or abused its discretion. *Wetzel v. City of Altoona,* 152 Pa.Cmwlth. 309, 618 A.2d 1219 (1992).

5. Section 3201(a) and (b) was subsequently deleted when the Act was amended on December 18, 1992.

noncompliance with Section 3201(b) in this proceeding.

■ Moreover, while asserting that it is not a unit owner, KMALM does not challenge the validity of the 1987 Corrective Amendment, the 1991 agreement of sale or the 1992 deed. As already discussed, Mayflower Associates became the owner of the townhouse units created by the 1987 Corrective Amendment under Section 3211(a) of the Act, and KMALM subsequently acquired the ownership interests in the townhouse units and the parking spaces designated to those units by accepting the 1992 deed. Therefore, the noncompliance with Section 3201(c) of the Act prohibiting conveyance of interests in the units until substantial completion is not relevant to the issue of whether KMALM is responsible for the assessments and fees for the parking spaces under the Act and the Declaration.

Under Section 10.1(a) of the Declaration, a parking garage is part of a "common element." [6] Each covered parking space in the parking garage becomes a "limited common element" when it is allocated to a unit by a declaration, deed or assignment. Section 1.3.2(i) of the Declaration. In this matter, the garage parking spaces became the limited common elements when they were assigned to the twelve townhouse units in the 1987 Corrective Amendment. Under Section 10.1(c) of the Declaration, "[e]ach Unit Owner to whom a parking stall shall be allocated by deed, easement or assignment as a Limited Common Element shall have the exclusive use of the parking stall so assigned, and shall have the right to reallocate, by a recorded assignment executed by the Unit Owners . . ., the parking stall so allocated."

■ A condominium form of ownership in real estate succeeds because unit owners agreed to cooperate in the maintenance of common elements. *Rivers Edge Condominium Ass'n v. Rere, Inc.*, 390 Pa.Super. 196, 568 A.2d 261 (1990). Because KMALM ac-

quired the exclusive right to use the parking spaces by accepting the deed in 1992, it is bound by the Act and the Declaration allocating the expenses for maintaining the parking spaces.

Section 3314(c)(1) and (2) of the Act, 68 Pa.C.S. §3314(c)(1) and (2), allocates the common expenses [7] as follows:

(c) Special allocations of expenses.—Except as provided by the declaration:

(1) Any common expense associated with the maintenance, repair or replacement of a limited common element shall be assessed in equal shares against the units to which that limited common element was assigned at the time the expense was incurred.

(2) Any common expense benefiting fewer than all of the units shall be assessed exclusively against the units benefited.

Section 10.1(f) of the Declaration similarly allocates the expenses for maintaining garage parking stalls as follows:

(f) In the event of allocation of all or part of the garage parking stalls, to designated Units as Limited Common elements, the owner of each Unit to which a parking stall is assigned at the time when expenses for maintenance, shall be assessed for a proportion of such expenses calculated by a numerator of one (1) for each parking stall and the demonimator [sic] of the total number of parking stalls in the garage. Declarant, until the time when any unallocated parking stalls shall be assigned to the Association after such time, shall be assessed for the same proportion of such expenses for each unallocated parking stall.

KMALM contends that Section 10.1(f) of the Declaration is grammatically incorrect and ambiguous and therefore does not constitute a binding contract governing the allocation of expenses for maintaining the parking spaces.

---

**6.** "Common elements" are "[a]ll portions of a condominium other than the units." Section 3101 of the Act; Section 1.3.2(d) of the Declaration.

**7.** "Common expenses" are defined as "[e]xpenditure made or liabilities incurred by or on behalf of the association, together with any allocations to reserves, including general common expenses and limited common expenses." Section 3103 of the Act.

The fundamental rule in construing a contract is to ascertain and give effect to the intention of the parties. *Lower Frederick Township v. Clemmer*, 518 Pa. 313, 543 A.2d 502 (1988). The intention of the parties must be ascertained from the document itself, if its terms are clear and unambiguous. *Hutchison v. Sunbeam Coal Corp.*, 513 Pa. 192, 519 A.2d 385 (1986). A contract is ambiguous if it is reasonably susceptible of different interpretations and capable of being understood in more than one sense. *Sun Co. (R & M) v. Pennsylvania Turnpike Commission*, 708 A.2d 875 (Pa.Cmwlth.1998). A determination of whether a contract is ambiguous is a question of law. *Id.*

While the language of Section 10.1(f) is grammatically incorrect, it nonetheless clearly allocates the expenses for the parking spaces among the declarant, the Association and the unit owners.

The second sentence of Section 10.1(f) provides that the declarant has an obligation to pay for the expenses for maintaining unallocated parking stalls until all remaining unallocated parking spaces are assigned to the Association. Once a parking stall is designated or allocated to the units, the owner of the unit is assessed such expenses pursuant to the formula provided in the first sentence of Section 10.1(f). In 1987, Mayflower Associates, as the declarant, designated and allocated the twelve parking spaces to the townhouse units created by the 1987 Corrective Amendment. Thus, after acquiring the title to the property from the bankruptcy trustee in 1992, KMALM was obligated to pay the parking space assessments imposed by the Association.

KMALM contends, however, that it only acquired the special declarant right by the 1992 deed, and that it therefore has no obligation to pay for the expenses for maintaining the unallocated parking spaces.

Section 3304(c) of the Act, 68 Pa.C.S. §3304(c), provides that in case of sale by a bankruptcy trustee, a person acquiring title to the units succeeds to "all special declarant rights" upon request. Our review of the June 4, 1991 Agreement of Sale and the February 10, 1992 Assignment indicates that the bankruptcy trustee assigned the special declarant rights reserved by Mayflower Associates in the Declaration to KMALM. However, KMALM totally disregards the fact that it acquired not only the special declarant rights but also the title to the twelve townhouse units and the exclusive right to use the parking spaces designated for those units by accepting the 1992 deed. Even assuming *arguendo* that the twelve parking spaces have never been allocated to either the Association or KMALM, as KMALM asserts, KMALM would be still liable for the parking space expenses as a successor declarant under the second sentence of Section 10.1(f) of the Declaration.

The courts have consistently held that the private development property owners' association is authorized to impose on the owners special assessments for improvements of the common areas even where the deed does not expressly authorize the association to impose such assessment, because the owners would benefit from such improvement. *See Spinnler Point Colony Ass'n v. Nash*, 689 A.2d 1026 (Pa.Cmwlth.1997); *Fogarty v. Hemlock Farms Community Ass'n*, 685 A.2d 241 (Pa. Cmwlth.1996), *appeal denied*, 548 Pa. 639, 694 A.2d 624 (1997); *Meadow Run & Mountain Lake Park Ass'n v. Berkel*, 409 Pa.Super. 637, 598 A.2d 1024 (1991), *appeal denied*, 530 Pa. 666, 610 A.2d 46 (1992). Thus, as the unit owner with the exclusive right to use the parking spaces, KMALM is obligated to pay for the maintenance of the parking spaces under not only the Declaration and the Act but also the general principle of property law.

Accordingly, the order of the trial court is affirmed.

### ORDER

AND NOW, this 8th day of January, 1999, the order of the Court of Common Pleas of Montgomery County in the above-captioned matter is affirmed.