MEADOW RUN/MOUNTAIN LAKE PARK ASSOCIATION

v.

Esther BANTELL, John Barnas, Al Battelo, Vina Battelo, William Dougherty, Helen Dougherty, Gerard Exter, Arthur Exter, Michael Gober, Irene Gober, Lola Greytock, Lucille Zavada, Victoria Popple, William Romanoski, Anna Szostak, John A. Szostak, George H. Weitz, Sherry L. Weitz, Joseph Zyskowski and Karen Zyskowski.

Appeal of: William Dougherty and Helen Dougherty, George Exter, Executor of the Estate of Exter and Arthur Exter, William Romanoski, Anna Szostak and John A. Szostak, George H. Weitz and Sherry L. Weitz, Joseph Zyskowski and Karen Zyskowski.

Commonwealth Court of Pennsylvania.

Argued Nov. 9, 2009.

Decided Dec. 4, 2009.

William E. Vinsko, Jr., Wilkes–Barre, for appellants.

Patrick T. Barrett, Wyomissing, for appellee, Meadow–Run/Mountain Park Association.

BEFORE: COHN JUBELIRER, Judge, and FRIEDMAN, Senior Judge, and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FRIEDMAN.

Owners and former owners of lots in the development known as Meadow Run/Mountain Lake Park (Landowners)[1] appeal from the January 4, 2008, order of the Court of Common Pleas of Luzerne County (trial court) entering verdicts in favor of the Meadow Run/Mountain Lake Park Association (Association) and against each individual Landowner for the amount of unpaid annual assessments levied by the Association. We affirm.

The Association is a nonprofit corporation that represents the interests of property owners in the development by virtue of covenants and restrictions that are recited in the property owners' deeds.[2] Each of the deeds also contains the following language: "In Witness Whereof, said Grantors have set their hands and seal the day and year first above written." (Trial ct.'s Conclusions of Law, No. 5.)

The Association depends upon an annual assessment on the lot owners to pay common expenses, such as insurance, snow plowing, road maintenance, dam maintenance and legal fees. The Association's board of directors sets the annual assessment, and, at the beginning of each year,

1. Landowners include William Dougherty and Helen Dougherty; George Exter, Executor of the Estate of Exter, and Arthur Exter; William Romanoski; Anna Szostak and John A. Szostak; George H. Weitz and Sherry L. Weitz; and Joseph Zyskowski and Karen Zyskowski.

2. The following language is contained within the deed, or in the chain of title, of each individual Landowner and also is included in the Association's bylaws and constitution:

In the event of the formation or incorporation of the association of the lot owners on above-mentioned lots of Mountain Lake Park, the occupants of the above-described premises shall be bound by such rules and regulations concerning the use of Mountain Lake as to boating, bathing, ice skating and fishing, as may be duly formulated and adopted by such association or incorporation.

(Trial ct.'s Findings of Fact, No. 4.) Although the deed does not mention assessments, it does put property owners on notice that, if an association of lot owners is formed in the future, they would be bound by any rules the association adopted concerning the usage and maintenance of development facilities. *See Meadow Run and Mountain Lake Park Association v. Berkel*, 409 Pa.Super. 637, 598 A.2d 1024 (1991), (holding that the Association is authorized to levy assessments for the maintenance of the development's common facilities), *appeal denied*, 530 Pa. 666, 610 A.2d 46 (1992).

the Association sends invoices to each lot owner setting forth the amount that is due in June. The invoices include a provision for payment of interest and service charges on assessments not timely paid, although there are no written agreements or resolutions requiring the lot owners to pay interest or service charges on unpaid assessments. If an owner's assessment goes unpaid, the owner is sent reminder notices. (Findings of Fact, Nos. 2, 6, 7, 9; R.R. at 15, 42–43.) There is no dispute as to the Association's right to levy annual assessments against the individual Landowners. *Meadow Run and Mountain Lake Park Association v. Berkel*, 409 Pa.Super. 637, 598 A.2d 1024 (1991), *appeal denied*, 530 Pa. 666, 610 A.2d 46 (1992).[3]

In 2003, 2004 and 2005, the Association filed separate complaints against the individual Landowners, seeking payment of unpaid annual assessments from 1984 or the date on which each Landowner acquired ownership. The trial court consolidated the actions and held a non-jury trial at which the only disputed issue was the applicable statute of limitations. The Association asserted that its claims fell under section 5529(b)(1) of the Judicial Code, 42 Pa.C.S § 5529(b)(1), providing a twenty-year statute of limitations governing actions upon written instruments under seal, or section 5530(a)(2) of the Judicial Code, 42 Pa.C.S. § 5530(a)(2), providing a twen-

ty-one year statute of limitations applicable to actions for charges upon real property. Landowners maintained that the matter was subject to the four-year statute of limitations applicable to contracts implied in law, pursuant to section 5525(a)(4) of the Judicial Code, 42 Pa.C.S. § 5525(a)(4).[4] The Association sought recovery of $7,228.36 to $19,361.45 from each Landowner, while Landowners argued that the maximum amounts owing ranged from $2,900.00 to $5,900.00.

The trial court concluded that the Association's cause of action involves the enforcement of a covenant contained in an instrument in writing under seal, and, therefore, the twenty-year statute of limitations set forth in section 5529(b)(1) applies. Accordingly, on January 4, 2008, the trial court entered verdicts against each Landowner, plus six per cent interest from the date each debt became due and payable. By order dated March 7, 2008, the trial court denied Landowners' motion for post-trial relief, and Landowners now appeal to this court.

Landowners argue that the trial court erred in determining that the twenty-year statute of limitations provided by section 5529(b)(1), rather than the four-year statute of limitations contained in section 5525(a)(8), applies.[5] The four-year statute of limitations set forth in section 5525(a)(8) governs "action[s] upon a contract, obligation or liability founded upon a writing

---

3. The superior court's opinion reflects that, from 1982 to June 1984, the Association relied upon the voluntary contributions of lot owners; in June 1984, the Association passed a resolution assessing each lot owner $300 for the repair of dams and roads owned by the Association and used by all lot owners in the development. The assessment increased to $350 in 1998 and to $750 in 2003. (Trial ct.'s Findings of Fact, No. 8.)

4. The trial court's reference to section 5524(1)(4) is in error.

5. Landowners appear to have abandoned their argument that this action involves a contract implied in law governed by section 5525(a)(4) of the Judicial Code, 42 Pa.C.S. § 5525(a)(4), asserting instead that the present matter is subject to the provisions of section 5525(a)(8). However, both statutory provisions set forth a four-year limitations period applicable to contractual obligations, and the Association does not contend that Landowners have waived this issue.

not specified in paragraph (7), *under seal or otherwise,* except an action subject to another limitation specified in this subchapter." 42 Pa.C.S. § 5525(a)(8) (emphasis added).

Landowners argue that their obligation to pay the assessments arises from the deeds under a theory of unjust enrichment, based on the relationship between the Association and Landowners. Landowners describe this relationship as "contractual in nature and exactly the type of situation outlined in 42 Pa.C.S. § 5525(a)(8)." (Landowners' brief at 11.) However, in *Berkel,* the court held that the Association has authority to levy assessments by virtue of the deeds' restrictive covenants. Stated otherwise, the authority of the Association does not depend on any contractual agreement. Landowners acknowledge that the deeds are conveyances of land and not contracts; nevertheless, Landowners' arguments depend on various principles of contract law.

Landowners' reasoning can be fairly summarized as follows: 1) the deeds provide authority for the Association to impose assessments; 2) the deeds are not contracts; 3) even if they were contracts, Landowners never signed or accepted a contract under seal; 4) the relationship between the Association and Landowners is based on the contractual theory of unjust enrichment; and, therefore, 5) the four-year statute of limitations governing contracts under seal applies.[6]

We conclude that the trial court correctly determined that section 5529(b)(1) applies to the Association's claims. Section 5529(b)(1) states that, "Notwithstanding section 5525(7) (relating to four year limitation), an action upon an instrument in writing under seal must be commenced within 20 years." A deed is a "written instrument by which land is conveyed," *Black's Law Dictionary* 444 (8th ed. 2004), and the deeds are under seal. Landowners' arguments on appeal are without merit.

Accordingly, we affirm.

### ORDER

AND NOW, this 4th day of December, 2009, the order of the Court of Common Pleas of Luzerne County, dated January 4, 2008, is hereby affirmed.

---

**6.** Citing *Township of Indiana v. Acquisitions and Mergers, Inc.,* 770 A.2d 364 (Pa.Cmwlth. 2001); *Packer Society Hill Travel Agency, Inc. v. Presbyterian University of Pennsylvania Medical Center,* 430 Pa.Super. 625, 635 A.2d 649 (1993); and *Birchwood Lakes Community Association, Inc. v. Comis,* 296 Pa.Super. 77, 442 A.2d 304 (1982), Landowners argue that section 5529(b)(1) cannot apply to this matter because the deeds in question are not contracts. (See Landowners' brief, at 8–9, stating that decisions interpreting section 5529(b)(1)

have "always centered around the fact" that the twenty-year statute of limitations governs *contracts* under seal.) However, Landowners subsequently acknowledge that, in *Township of Indiana,* we held that section 5529(b)(1) applies only to bonds and similar written instruments under seal, and section 5525(a)(8) applies to all contracts in writing that are not negotiable or non-negotiable bonds or similar instruments, irrespective of whether the contract is under seal. (Landowners' brief at 11.)