## CIRCUIT COURT OF FREDERICK COUNTY

Layside Estates Property
Owners' Association, Inc.

v.

Thomas G. Buterakos et al.

September 29, 1987

Case No. C-85-43

By JUDGE ROBERT K. WOLTZ

Involved in the case is a suit by the complainant against thirteen owners of fifteen lots in or adjoining Layside Estates seeking to exact from them contribution towards certain expenditures made by the association on certain roadways in the development as well as requiring them to contribute to expenditures on the roadways in the future. Complainant owns the roadways as a servient tenement. All the lot owners in the development except one hold dominant tenements with regard to the roadways, each holding an easement over them for ingress and egress with respect to either one or the other of two public highways. The owners of twenty-nine lots, there being a total of forty-four, voluntarily made contribution to the association, in the words of the bill of complaint "so that certain of the roads could be upgraded and all the roads maintained and repaired."

To dispose of pending procedural matters, first the defendants Saville, Bussard and Tall are in default and as to them the bill of complaint will be taken as confessed. Second, the demurrer of the defendant Gano is overruled.

Next though I do not recall any exhibit in the file of the case establishing the situation of the defendant

Buterakos with relation to the roads, there was some reference in the record or the memoranda of counsel that the conveyance to him did not include any easement over the roads in question. If he has not been vested with a legal right to an easement over the servient tenement then he would have no legal obligation with regard to them. He would of course be subject to sanction if he should seek to exercise use of these roadways in a presumed capacity as owner of a dominant tenement. As to remaining matters:

1. Do the easement owners have a duty of repair and maintenance of the easements? No Virginia case precisely in point has been cited, however, *Oney v. West Buena Vista Land Co.*, 104 Va. 580 (1905), is helpful. There a developer subdivided land, laying out streets. Developer built a bridge connecting the development with the public ways of an adjoining municipality. Lots in the development were sold with reference to a recorded plat which showed the bridge, which developer built and opened for use by the public. Some years later the developer sold the bridge and it was in the process of being dismantled. Property owners in the development asserted a right to continued use of the bridge.

Though there was no express conveyance of an easement in the bridge to the property owners the court held under the circumstances that there was an implied easement, but that the development company had no obligation to make repairs and that:

> [T]his duty rests upon those who use the easement, and if they failed to keep it in proper condition for the uses for which it was granted or dedicated, they must suffer the resulting inconvenience.

Decision further was that those claiming an easement in the bridge were required to restore it appropriately for its purposes and if not done in a reasonable time they would be deemed to have abandoned the easement in which event the bridge could be sold by the developer.

Complainant cites *Island Improvement Association v. Ford*, 383 A.2d 133 (N.J. Sup. 1978), as being closely in point to the case at hand. There a private association

held title to a developed residential area. The association had granted express easements in these roads to the various property owners but none of the conveyances imposed a contractual obligation on the property owners to maintain the roads. Holding that the property owners must contribute to maintenance of the roads that court said:

> The *right* of the dominant tenant to maintain and repair has been recognized as an incident to the beneficial use of the easement. (Citations omitted) Convinced that with the benefit ought to come the burden, absent agreement to the contrary, we hold that the *obligation* to maintain devolves upon the dominant tenant. (Citation omitted; emphasis in original)

Cited in that decision and by the complainant is *Restatement, Property*, § 485, which says in part:

> If the language of a conveyance creating an easement is so indefinite as not clearly to provide for a duty to repair, the inference to be drawn is that such duty as exists is upon the owner of the easement.

As noted the conveyances creating the easements made no provisions with respect to their maintenance. I am convinced in this case that the owners of the easements have an obligation to repair and maintain them.

2. Do the easement owners have a duty to make improvements to easements? *See generally*, 25 Am. Jur., *Easements and Licenses* § 85. I am of opinion that absent a contractual duty to do so, the owners of a joint easement have no obligation to make improvements to an easement or to contribute to the making of improvements made by other joint owners of the easement or by the servient tenant. All the authorities mentioned above speak of repair and maintenance when delineating any duties which dominant tenants may have with respect to easements. Though evidence has not been introduced, it appears from the briefs of counsel that the roads over which the easements ran, or at least some of them, were paved and contribution from the defendants is sought for that expense. Counsel for one defendant

cites the California case of *Holland v. Braun*, 294 P.2d 51 (1956), which is not available to me, as holding that under a California statute concerning sharing of expenses amongst easement holders for the cost of maintaining and repairing the easement that the paving of a road was not a repair but an improvement, and that without consent co-owners of the easement could not be forced to contribute towards the cost of the pavement. The case of *McManus v. Sequoyah Land Associates*, 49 Cal. Rptr. 592 (1966), confirms that as the holding in *Holland* and approves it. The holding in *McManus* concerned the obligation to contribute to improvements based on contractual considerations.

Where there is no duty based on contract requiring joint owners of easements to make or contribute to the making of improvements to their easement, it would be inequitable to require some of the joint owners involuntarily to contribute to the payment of the improvements on the basis that other joint owners had contributed to that project. This would put in the hands of one or more owners the power to make improvements, howsoever expensive, to an easement without the consent or even against the will of other owners and then exact from the latter a portion of the costs of the project. In my view in these circumstances the law does not give to one private interest the power to exercise such tyranny over another private interest.

This holding unavoidably raises the problem of drawing a line between repairs and improvements. There are surely gray areas and no precise line can be drawn in the abstract. This is a problem which in many instances in which the solution must rest on the facts.

3. If noncontributing owners are liable to make contribution can they be deemed to have abandoned their easement rights without being given a reasonable time in which to contribute? An easement for egress and ingress and for similar purposes is a valuable right, and often affects very materially the value of the estate to which it is appurtenant. Such a right should not be summarily canceled. On the strength of *Oney* I hold that if any of the noncontributing easement owners are determined to owe anything by way of repairs they should be given a reasonable time under the circumstances to make their contribution. But the factual situation in *Oney* with

regard to the physical subject of the easement and the nature of the proceedings was quite different from the present case. Less drastic relief than that of declaring easement rights abandoned may be available and if so should be used.

4. In the event of liability on the part of the noncontributing easement owners, what remedy should be fashioned in favor of the complainant? Issue arises whether each property owner in the whole development should be liable for an equal contribution or whether contribution should be apportioned on the basis of the number of lots an individual may own, whether a lot is improved or unimproved, if improved whether by a permanent or a second or occasional residence, or on the basis of other extent of usage by the various owners. The owners do not all have the same rights to usage of the various roadways subject to easement. In the main if not exclusively they have right of egress and ingress over a specific course of travel. This is unlike many recreational or other developments where contractually a lot owner is required to pay a fee for maintenance of all roads in the development but has equal right with other lot owners to use all those roads.

In any event there is a considerable problem from an administrative standpoint. Who will determine what, where and when repairs are to be made? Who will assess and collect the contributions from the owners and who will engage and pay for labor and materials to effect the repairs? These problems of administration as well as an equitable basis of apportionment of costs among the owners can best be resolved after evidentiary hearing. For that purpose the matter will be referred to a commissioner in chancery and counsel are invited and requested to submit specific points of reference which should be made to the commissioner.